IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KEITH HEGLAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV761 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Keith Heglar ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on October 17, 2012, alleging a disability onset date of June 15, 2011. (Tr. at 10, 182-85.)[1] His claim was denied initially (Tr. at 51-67, 97-101), and that determination was upheld on reconsideration (Tr. at 68-86, 105-12). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 113-14.) Plaintiff, along with his attorney and an

---

[1] Transcript citations refer to the Administrative Record [Doc. #7].

impartial vocational expert, attended the subsequent video hearing on September 2, 2015. (Tr. at 10.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 21), and, on June 16, 2017, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since June 15, 2011, his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> history of thyroid cancer status post-surgery; loss of speech; hypothyroidism; obstructive sleep apnea; migraines; diabetes mellitus; obesity; mood disorder; and attention deficit disorder (ADD).

(Tr. at 12.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 13-16.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could

> perform medium work as defined in 20 CFR 404.1567(c) except he can occasionally climb ladders, ropes or scaffolds, can frequently climb ramps and stairs, and can frequently kneel, stoop, crouch and crawl. The claimant is limited to occupations that require occasional speaking. The claimant is limited to

5

> working in environments with moderate background noise. The claimant is limited to jobs that do not require phone usage to do the job. The claimant would need to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant is limited to simple, repetitive, routine work with few, if any, workplace changes. The claimant can tolerate occasional supervision, can work in proximity to co-workers, but not with them, and can have incidental interaction with the public, but no direct customer service. The claimant would miss 1-2 days of work per month.

(Tr. at 16.) At step four of the analysis, the ALJ determined that all of Plaintiff's past relevant work exceeded his RFC. (Tr. at 20.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 20-21.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 21.)

Plaintiff now contends that the ALJ erred by failing to properly evaluate the medical opinion of Plaintiff's endocrinologist, Dr. Tracie Farmer. For claims, like Plaintiff's, that are filed before March 24, 2017, ALJs evaluate the medical opinion evidence in accordance with 20 C.F.R. § 404.1527(c). Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017). "Medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (citing 20 C.F.R. § 404.1527(a)(1)). While the regulations mandate that the ALJ evaluate each medical opinion presented to her, generally "'more weight is given to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'" Brown, 873 F.3d at 255 (quoting 20 C.F.R. § 404.1527(c)(1)). And, under what is commonly referred to as the "treating physician rule," the ALJ generally accords the greatest weight—controlling weight—to the well-supported

6

opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in [the] case record," it is not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4; Brown, 873 F.3d at 256; Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.[4] Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. Even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairments, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

---

[4] For claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

Where an ALJ declines to give controlling weight to a treating source opinion, she must "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account, 20 C.F.R. § 404.1527(c)(2). This requires the ALJ to provide "sufficient explanation for 'meaningful review' by the courts," Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted). Notably, "[w]hile an ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence, the ALJ may not cherry-pick trivial inconsistencies between a treating physician's opinion and the record or take evidence out of context to discount the physician's opinion." Meyer-Williams v. Colvin, 87 F. Supp. 3d 769, 772 (M.D.N.C. 2015) (internal citations and quotation omitted).

In the present case, Dr. Farmer issued a medical statement on August 6, 2015, in which she opined that Plaintiff would "be off-task for greater than 20% of the workday" or was "likely to be absent from work more than two days per month." (Tr. at 977.) The ALJ recounted these findings in her decision, but did not give them controlling weight, finding that:

> The claimant's treating endocrinologist concluded in August 2015 that the claimant would be off-task 20% of the workday and likely be absent from work more than two days per month. I afford this opinion little weight because it is inconsistent with the record that notes improvement in the claimant's fatigue.

(Tr. at 18-19.) The ALJ provided no further explanation for discounting Dr. Farmer's findings. Moreover, as Plaintiff notes, the ALJ included no record citations supporting her assertion of inconsistency. Elsewhere in her opinion, the ALJ recounted a treatment note from April 2013 indicating "improved fatigue on less [thyroid] medicine." (Tr. at 17, 597.) However, the ALJ did not address the records from Plaintiff's next visit, in June 2013,

reflecting that Plaintiff's fatigue had increased (Tr. at 789). The ALJ also noted that "[w]ith regard to claimant's obstructive sleep apnea, migraines, and diabetes mellitus, . . . [p]rimary care provider notes from 2014 state the claimant's improved fatigue, suggesting that his condition is not as severe as alleged." (Tr. at 18.) However, the ALJ again failed to identify the supporting record(s) on which this statement was based. A thorough review of the record reveals that Plaintiff did report reduced (but never absent) fatigue levels on several occasions in response to changes in his medications. (Tr. at 419, 597, 695, 730, 757, 768.) However, the record further reflects that these improvements were short-lived and modest, e.g., reducing Plaintiff's sleep from 16-18 hour per day to 11-14 hours, or allowing him to function well for 3-4 hours. (Id.) Overall, both Dr. Farmer's treatment notes and the record as a whole are replete with reports that Plaintiff's fatigue continued throughout the time at issue and seriously impacted his functioning. (Tr. at 416, 423, 597, 600, 627, 628, 688, 692, 699, 704-05, 730, 746, 789, 814, 873, 875, 907, 931, 971.) Accordingly, alleged improvement in Plaintiff's fatigue cannot serve as the sole basis for discounting Dr. Farmer's treating opinion.

Defendant also suggests that Plaintiff's fatigue primarily stemmed from his obstructive sleep apnea rather than his thyroid issues, and that the record shows, at best, inconsistent CPAP use throughout the relevant time period. (Def.'s Br. [Doc. #15] at 7-8.) These additional arguments are inapposite. The ALJ based her decision to give little weight to Dr. Farmer's opinion not on the uncertainty as to the source of Plaintiff's fatigue or his failure to follow through on recommended treatment, but rather on the alleged improvement in his symptoms. As explained above, the record fails to substantiate this basis, and the Commissioner cannot rely on post hoc rationalizations not relied upon by the ALJ. See

9

Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 (M.D.N.C. March 25, 2014) ("Review of the ALJ's ruling is limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering *post hoc* rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.' " (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)). Because substantial evidence fails to support the ALJ's treatment of Dr. Farmer's opinion, remand is required.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #12] should be GRANTED to the extent set out herein.

This, the 11th day of July, 2018.

                                             /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge